BRUCE KITTREDGE, By Pro Ami, *vs.* WILLIAM O. FROTHINGHAM.

Franklin.   Opinion April 1, 1916.

*Arrest and Detention.     Declaration or Statement of Deputies as Binding upon Sheriff.     Duties of Officers having Reasonable Grounds to believe that a Felony has been committed.*

A man closely resembling the plaintiff had committed a felony by raising or forging a check given to him in payment of his labor. Warrant was issued for the man's arrest and the plaintiff, while riding on a train, was noticed by the man whose check was forged, he calling the deputy sheriff's attention to the similarity of description. This deputy telephoned to another deputy, in an adjoining town, to arrest the plaintiff when he arrived there and hold him for identification.

It was admitted in evidence that the description given to the officer of the man who had committed the felony fitted the plaintiff very closely in minute detail.

Plaintiff was detained by deputy sheriff at about noon of that day. In the afternoon of the same day, he was locked in a cell and as soon as the parties could reasonably reach the place of detention, the plaintiff was found not to be the man wanted and was released. Evidence showed that the plaintiff was confined less than twenty-four hours.

In suit brought against sheriff for the alleged wrongful detention and arrest by his deputy, held:

1. That the officer, acting in a reasonable manner and having reasonable grounds for suspecting the plaintiff to be the person wanted, and having used all necessary and reasonable means to obtain the identification of the plaintiff within a reasonable time, was not liable for his detention and arrest.

2. That the sheriff and his deputies, so far as the performing of lawful acts are concerned, are considered one and the same and the sheriff is liable for the misconduct and wrongful acts of his deputy, while the deputy is performing his official duties, but they are not agents of each other, only so far as they are authorized and required by law to aid and assist each other in the performance of their official duties.

3. The declaration of an agent, to be binding upon his principal, must be made by the agent when he himself is engaged in transacting the business of his principal and is acting within the scope of his authority.

Action on the case to recover damages for alleged false arrest and imprisonment. Plea, general issue and brief statement. Verdict for plaintiff. Defendant filed exceptions and motion for new trial. Certain exceptions allowed. Motion sustained. New trial granted.

Case stated in opinion.

*Elmer E. Richards and Kenneth A. Rollins,* for plaintiff.

*Albert Beliveau,* for defendant.

Sitting: Savage, C. J., King, Bird, Haley, JJ.

Haley, J. An action against the sheriff of Oxford county for the alleged unlawful arrest and imprisonment of the plaintiff by his deputy, Everett M. Bessey. The verdict was for the plaintiff, and the defendant brings the case to this court upon exceptions and a motion for a new trial.

The record shows that the last of July, 1914, a laborer known as Barbrick worked in the woods for Mr. Hastings of Auburn, and the foreman gave an order for Mr. Hastings to pay him for his

labor. Mr. Hastings made a check and gave it to his clerk, and the clerk turned it over to Barbrick. When the check was returned as paid the first of August it was discovered that it had been raised from $7 to $17. Immediately Mr. Hastings obtained a warrant from a trial justice at Gilead for forgery, and a description of the man Barbrick was given by the foreman under whom he worked in the woods, and the warrant was placed in the hands of a deputy sheriff for service. On the 8th day of August Mr. Hastings was on the train from Gilead to Auburn, and observed the plaintiff leave the train at Bryant's Pond, and called the attention of Mr. Atketts (Arkett), a deputy sheriff, to him, and stated that he believed he was the man that he wanted apprehended, and related the circumstances of the alleged forgery. As the train pulled out from Bryant's Pond they both saw the plaintiff take the public conveyance plying between Bryant's Pond and Rumford. They both thought that the man answered the description of Barbrick which had been given to Mr. Hastings, and Mr. Hastings asked the deputy sheriff to telephone, or have the sheriff telephone, to Rumford to detain the plaintiff until it could be determined if he was the man wanted by the name of Barbrick. Upon the arrival of the plaintiff at Rumford, Mr. Bessey, from an examination, concluded that the plaintiff answered the description that had been telephoned him, and asked him to go to the police station, stating that he had instructions from the sheriff at Bryant's Pond that he wanted a man of his description. The arrest, or detention, was at about noon on Saturday. The plaintiff was not imprisoned until the latter part of that afternoon. As soon as the plaintiff and the deputy Bessey had taken dinner at a restaurant, Mr. Bessey communicated with Mr. Atketts and also Mr. Hastings, but before he could reach Mr. Hastings he was obliged to telephone to several dfferent places, and when Mr. Hastings was finally located he was at Auburn, and he said he would be there with some one to identify the plaintiff, if he was the man Barbrick, as soon as possible. The next day, between twelve and one o'clock, Mr. Bessey was called away on business, and having ascertained that Mr. Hastings was coming, told the chief of police that he had been in communication with Mr. Hastings, who would be there shortly, and if he did not come before he, Bessey, left, to take charge of the case and if the

man was not identified as Barbrick, to allow him to go.  Mr. Hastings, when informed by telephone that a man was arrested and requested to come to identify him, stated that he could not personally identify him, but that he would get his foreman who hired him, and the clerk in the store, and come to Rumford as soon as he could.  He took the 2.30 train from Auburn, went to Gilead, and thence by team to Hastings, and took an auto and found out that the foreman who had hired Mr. Barbrick was on a farm in Masontown some ten miles away.  He took the clerk in the store and started for Masontown.  On the way he met with an accident to his machine, so that after having obtained the foreman they could not reach Rumford until two or three o'clock in the morning, and so they put up that night and went to Rumford the next forenoon, arriving there between twelve and one o'clock, and immediately they went to the police station and the foreman and clerk declared that the plaintiff was not the man Barbrick, and he was released.  The testimony is that the plaintiff answered the description given of the man Barbrick, even to the color of his shoes.

The first exception was to allowing the plaintiff to testify to a conversation made by Thomas W. Penley, a deputy sheriff, after listening to the plaintiff's story while he was in the police station, not in the presence of the sheriff, the nominal defendant, or in the presence of Everett M. Bessey, the real defendant.  The plaintiff seeks to justify the admission of the testimony by the claim that a sheriff's deputies are his agents, that the law regards the sheriff and his deputies as the same officer.  They are the same officer as far as the performing of lawful acts are concerned, and the sheriff is liable for the misconduct or wrongful acts of his deputy while the deputy is performing official business, but they are not agents of each other only as they are authorized and required by law to aid and assist each other in the performance of their official duties.  The question at issue was whether or not Mr. Bessey was guilty of any wrongful act in detaining the plaintiff as he did?  That was a question to be settled by the jury from the evidence in the case and the opinion or statement of another deputy sheriff, however, strongly expressed, if not in the presence of Mr. Bessey, was not admissible as tending to prove Mr. Bessey

guilty of the alleged wrongful acts. Even if Penley had been an agent of the sheriff, he would not have been an agent of Bessey with authority to bind Bessey by his statements. The arrest was made by Bessey, and it was for the arrest and detention of the plaintiff that this action is brought, and by no process of reasoning can it be made to appear that Penley's statements were admissible, even as claimed by the plaintiff, as an agent of the sheriff, or the defendant, because the declarations of the agent to bind the principal must be made by the agent when he himself is engaged as the agent in the transaction of his principal being investigated. Penley was not so engaged, but was a mere spectator. The testimony admitted was not in the presence of the sheriff or Mr. Bessey, so that they might reply or deny or explain the circumstances or conclusions expressed in that conversation. It was the statement by a witness who knew nothing as to the circumstances of the crime or the arrest, except as he had been informed by others than the sheriff or deputy sheriff Bessey. It was not even hearsay evidence, which would not be admissible, but was the opinion of a witness as to the guilt or innocence of the deputy Bessey upon hearsay evidence, and no legal reason can be given for its admission. Exception sustained.

Exceptions 2, 3, 7, 8, 9, 10 and 11 all relate to conversations between the plaintiff, his brother Glen Stevens and Thomas W. Penley, the deputy sheriff above referred to, all of which tends to show efforts to have the plaintiff released from arrest before Mr. Hastings could arrive with witnesses to determine whether the plaintiff was the man Barbrick, and to their conversation with said Penley, all of which was in the absence of the sheriff and his deputy Bessey. Some of the evidence being merely to the fact that they were present and heard the conversation of the deputy sheriff and other conversations would be immaterial as they did not state the conversation, if it did not tend to support the inadmissible testimony of the deputy Penley, but as it tended to prove the truth of the inadmissible testimony it is, as frankly stated by counsel in their brief, governed by the same rules that apply to the first exception and must be sustained.

Exception 4 was to the excluding of the question asked deputy sheriff Atketts, "That description, as far as you saw Mr. Kittredge,

did it fit him in any way?" There was no error in excluding the question. The witness could have been asked what description was given him of Mr. Kittredge, and what he observed about Mr. Kittredge, that corresponded with the description, and the jury might then have determined for themselves whether the description fitted him or not. The question called for the opinion of a witness, which was not proper under the circumstances disclosed. Exception overruled.

Exception 5 was to the exclusion of the question asked deputy Bessey by his counsel, "Did you do everything in your power to ascertain the identity of Bruce Kittredge?" The question was properly excluded. It called for the opinion of a witness as to his own acts, which was something the jury were to pass upon. It would have been proper for him to have stated all that he did to ascertain the identity of Mr. Kittredge, and the jury could have determined, under the instructions of the court, if he did all the law required of him. Exception overruled.

Exception 6 was to admitting the following question and answer: "Did you have any conversation with Mr. Cobb while you were there? Answer. Yes." This was in the absence of the defendant and deputy sheriff Bessey, but the fact that he did have conversation with Mr. Cobb, the conversation not being testified to rendered the testimony immaterial, and it was harmless error. Exception overruled.

The next two exceptions are to the refusal by the presiding Justice to give two requested instructions, the first of which being as to the right of an officer to arrest a person when he has reasonable grounds for suspicion that a felony has been committed. The court fully instructed the jury upon that branch of the case and the defendant was not prejudiced by the refusal of the Justice to repeat instructions which he had already given, in different words it is true, but the same in meaning.

The court also refused to instruct the jury: "I instruct you that in this case you are not to consider the question of exemplary damages." It was a question for the jury to say whether the arrest and detention of the plaintiff, if illegal, had been committed so unreasonably, recklessly, wantonly or maliciously that the plaintiff was entitled to exemplary damages. Exceptions overruled.

Motion. The evidence clearly shows that a felony had been committed by the raising of a check of Mr. Hastings. The check was payable to and delivered to one Barbrick. A warrant had been issued by the court having authority to issue it, ordering the arrest of said Barbrick. It was the duty of the defendant and his deputies to be vigilant in their search for the man Barbrick named in the warrant. The officer necessarily, under such circumstances as disclosed in this case, must exercise his judgment in the arrest of a person for the crime charged in the warrant, for, as said by the court in *Rohan* v. *Sawin,* 59 Mass., 281, "The public safety and the due apprehension of criminals, charged with heinous offences, imperiously require that such arrest should be made without warrant by officers of the law. . . . It is only necessary (for the defendant) to show that upon representations made to him of the commission of a felony, and other circumstances coming to his knowledge, he has reasonable grounds to suspect the plaintiff of having committed the crime of receiving stolen goods, knowing them to be stolen." See *Burke* v. *Bell,* 36 Maine, 317; *Palmer* v. *M. C. R. R. Co.,* 92 Maine, 399.

Did Everett M. Bessey have reasonable grounds to suspect the plaintiff of having raised a bank check? He was informed by a telephone message from another officer, whose duty it was to arrest the person who was alleged to have committed the felony, of the circumstances of the crime, of the warrant being issued and a description of the man Barbrick, and that the plaintiff was on the conveyance which would arrive at Rumford at about noon, that the man answered the description which he gave to Bessey of the person wanted for the crime, and requested that Bessey detain him, if he answered the description, that it might be determined if he was the man wanted. The description of the man's wearing apparel, as well as his personal appearance, answered in every detail the description received by Bessey. The information was given deputy Bessey by one who was in charge of the case, and, coming from a reasonable prudent man, an officer whose duty it was to arrest the person named in the warrant, it was not only the right of Bessey but his duty to arrest the plaintiff and hold him for the purpose of identification. An officer receiving the communication received by Bessey should apprehend the person

answering the description and hold him a sufficient length of time to properly investigate and ascertain whether the person arrested was the person named in the warrant. Were it otherwise persons who commit felonies and escape from the place where the crime was committed, could keep moving from town to town, and an officer would have no right to arrest and hold them for the proper person to come and identify them as the felons. Everything was done by deputy Bessey that he could do to ascertain whether the plaintiff was the man named in the warrant. He telephoned to Mr. Hastings, whose check had been raised, and was informed that Mr. Hastings, as soon as he could do so, would go to Gilead or Hastings and obtain the clerk and the foreman who could identify the plaintiff, if he was the man Barbrick, and the plaintiff was only detained a sufficient time for that to be done, and as soon as it was determined by the clerk and the foreman that the plaintiff was not the man Barbrick, he was immediately discharged from arrest.

There is nothing in the case which authorizes an inference that the deputy Bessey omitted to do anything that he could reasonably have done to ascertain whether the plaintiff was the man named in the warrant or not, or that he detained him longer than necessary to determine that he was not the person named in the warrant. Complaint is made that the plaintiff was confined in jail; but officers when they arrest men for felonies must confine them somewhere, and it appears that as long as the deputy Bessey could avoid doing so he did not lock the plaintiff up, but allowed him to remain with him, but when obliged to attend to other business he placed him in a place provided by the authorities for the detention of persons suspected of crime, and, although it was humiliating to the plaintiff to be so detained, it is necessary that an officer should have that right when they have reasonable grounds to believe that a felony has been committed and that the person detained is guilty of the felony. Being authorized by the law to do so, they are not liable in damages, when they only do the acts althorized by law.

*Exceptions 1, 2, 3, 7, 8, 9 10 and 11 sustained. Motion sustained. New trial granted.*